# CIRCUIT COURT OF BALTIMORE CITY

Filed October 28, 1891.

JOHNS
VS.
NORTH AVENUE R. R. CO.

See (affirmed), Koch vs. North Ave. R. R. Co., 75 Md. 222.

*Cowen & Cross* and *Bernard Carter* for plaintiff.

*Steele, Semmes & Carey* and *Fiedler C. Slingluff* for railway company.

DENNIS, J.—

This bill is filed to restrain the North Avenue Railway Company of Baltimore City from laying independent outside tracks for the operation of its road upon North avenue in front of the premises of the plaintiff, situated at the northeast corner of Madison and North avenues. The theory of the bill is that the company, under the ordinance which defines its route and provides for its use of the streets along which it is to run, only authorizes it to use the tracks of the other roads already laid on said avenue, or else to "straddle" said tracks by laying one of its rails between them; and does not authorize it to lay independent tracks wholly outside of them already, laid by other companies; and that the plaintiff, as an abutting owner, will be specially injured by the laying of the tracks as proposed, and hence is entitled to the process of this court to restrain the contemplated action.

The question involves the construction of the ordinance of the Mayor and City Council, No. 23, approved April 8th, 1891, under which the defendant company derives whatever rights it has to lay its tracks on North avenue and other streets in the city.

That ordinance is entitled "An ordinance to authorize the construction of city passenger railway tracks by the North Avenue Railway Company of Baltimore City on North avenue, from McCulloh street to Guilford avenue, and thence on Guilford avenue and North street to Lexington street, and thence on Lexington street to Charles street, and on North street to the north side of Fayette street."

The first section reads as follows:

"Be it enacted, &c., that the North Avenue Company, &c., be, and it is hereby authorized to lay down and construct double iron railway tracks for the purposes of its business, and in connection with double tracks now authorized to be constructed by it on North avenue to McCulloh street, beginning for said extension on North avenue at its intersection with the east side of McCulloh street, the present terminus of the tracks of the said company as heretofore authorized, and

running thence on North avenue eastwardly to Guilford avenue, and running thence on Guilford avenue and North street southwardly to the intersection of North street, with Lexington street, and thence on Lexington street to Charles street, and on North street to the north side of Fayette street."

The second section prescribes the gauge of the road, and contains a reservation to the Mayor and City Council to authorize the use of said tracks by any other company upon certain terms, which are fully set forth.

The third section reads as follows: "And be it further enacted and ordained, that it *shall be lawful* for the said North Avenue Railway Company of Baltimore City to use the tracks now laid on North avenue by the Baltimore City Passenger Railway Company, the Baltimore Union Passenger Railway Company, the North Baltimore Passenger Railway Company, or the Baltimore, Peabody Heights and Waverly Railroad Company, and the Baltimore and Yorktown Turnpike Company, in the manner and to the extent to which it is lawful for the Mayor and City Council to grant to the said North Avenue Railway Company of Baltimore City, the right to use said tracks, and in any case in which the said railroads are entitled to the exclusive use of their said tracks, then it *shall be lawful* for the said North Avenue Railway Company of Baltimore City to lay its rails outside and inside of said tracks of the other road, provided that if outside and inside tracks are laid, the distance between its rails and the corresponding rails of other roads shall not be less than six inches, nor more than two feet."

This is the ordinance in the form in which it was finally passed; but when first introduced into the council, the third section had this additional language following that just quoted, "And in case the said North Avenue Railway Company is legally prevented from laying its tracks inside and outside of the tracks of any other road or roads, then *it shall be lawful* for the said North Avenue Railway Company to lay parallel tracks at such places where so prevented in such manner as to leave at least ten feet between its outside rails and the curbs of the

streets." By an amendment, these lines first quoted were stricken out. and the ordinance was then passed as above set forth.

It is contended with great force and ability by the learned counsel on behalf of the plaintiff that the effect of this third section, coupled with the striking out of the words above quoted, is to restrict the broad terms of the first section, which would, standing alone, concededly give the defendant the right to lay independent outside tracks upon North avenue, and to compel it primarily to use the tracks of *other roads* in all cases where the Mayor and City Council had the power to confer such right, or where it could agree with such roads for such joint use; and where no such right existed on the part of the Mayor and City Council, or where such agreements could not be made, then it was authorized to use the inside and outside rail; but in no event is it permitted to use separate independent tracks.

After careful consideration of the ordinance, I cannot assent to this conclusion.

The first section is very broad, and unquestionably, standing alone would authorize the laying of independent tracks; in fact, it would authorize *only the use of independent tracks*. It certainly would not authorize the use of the tracks of other roads, even in these cases, where the Mayor and City Council had the right to authorize such use; nor do I think it would have authorized the use of inside and outside or "stradding" tracks. Taking the words that the proposed tracks were to be laid *"in connection"* with those already in use by the company on North avenue, which are independent tracks, and bearing in mind that the Mayor and City Council would hardly have intended without express terms of permission to have meant to have given the right to interfere with the business and the operations of their cars by other roads, which must inevitably result, to a more or less extent, from the laying of an inside rail, even if they had the power to confer such right, I think the fair and proper construction of said first section would confine it to an authorization only of independent tracks. If this position be sound, then the effect of the argu-

ment for the plaintiff would be wholly to nullify, by implication from the provisions of the third section, this entire first section; for it is contended by them that in no event can independent tracks be laid on North avenue.

Now it is a well settled rule that such constructions must be given to a statute as to make all parts of its stand if possible; it is never to be so construed as to nullify any provision, if the result can be avoided.

Applying this rule to the present ordinance, in order to give the first and third sections equal and full effect, the words "it shall be lawful" contained in the latter section must be held to be *permissive* and not *restrictive* in their operation; that is as authorizing the defendant, *if it should see fit*, to use the tracks of other roads where the power was given it, or it could agree for their use, and in the event of not having such power and failing to agree, to use an inside rail; and not prohibiting wholly and in any event the laying of an independent rail, thus confining it exclusively to the tracks of other roads or to an inside rail.

And there were reasons for this permission to the defendant: for it was stated in argument and not denied that there are certain mechanical advantages which accrue to an overhead electric railway from the occupation of the center of a broad highway, notably in the central pole system, which affords a more economical and efficient method of stringing its wires; and as it was likely the defendant might wish to avail itself of the permission contained in this third section on portions of its route along North avenue, the section was inserted at the company's own request to secure it this privilege.

Again, we find in the third section another provision which still more strongly enforces the above as the proper construction of the ordinance. I allude to that provision which in express terms forbids any construction to be given which would grant to the company "the right or privilege to lay *any additional tracks* on North avenue bridge." It must be conceded that this restriction was imposed to prevent the company acquiring a right, which otherwise would have been vested in them under the ordinance; otherwise,

it is wholly superfluous and meaningless. Assuming then that it was inserted to prevent the company from laying additional tracks, which right it would otherwise have had, what kind of "additional tracks" were alluded to? Certainly not inside and outside tracks or by the very terms of the third section such tracks could *only* be laid in the event of the company not having the right from the Mayor and City Council or by agreement, to use the tracks of other roads. Now the only tracks over North-avenue bridge are the tracks of the North Baltimore Passenger Railway Company, and these tracks the defendant company already had the right to use; hence it could not straddle those tracks by the use of an inside rail. So when the ordinance forbade the use of additional tracks upon the bridge, it must necessarily have referred to independent outside tracks, as the use of any other kind of tracks was already forbidden. If then the provision was inserted to prevent the company from laying independent outside tracks, and if without such restriction the company would have had such right, the right must have grown out of the broad power conferred by the 1st section, because there is no other part of the ordinance which can by any construction be made to confer the right to lay any kind of tracks. Thus we see that the ordinance itself on its face recognizes that under the 1st section the company had the right to run independent outside tracks even to the extent of placing them upon the bridge. The ordinance has restricted this right, so far as the bridge is concerned; which, of course leaves the right unaffected, so far as the rest of the avenue is concerned.

No argument favorable to the construction contended for by the counsel for the plaintiff can be drawn from the passage of the amendment, striking out from the third section the words already quoted; on the contrary, the amendment strengthens the position of the defendant. For, clearly the words stricken out, if they had been allowed to stand, would have operated as a restriction upon the broad power already conferred authorizing it to use outside tracks and confined its use of them to the case of its being able to use an inside rail; hence, the striking

out of these words by the amendment, must be taken as evidencing the intention of the ordinance to leave the right wholly unrestricted except as to North-avenue bridge.

The use of the words "it shall be lawful" in the third section do not have the controlling force that is sought to be attributed to them. Their natural meaning is permission; they "confer a faculty or power, and they do not of themselves do more than confer a faculty or power; and it rests upon those who contend that an obligation exists to exercise this power to show in the circumstances of the case something which creates this obligation." Julius vs. Bishop of Oxford, 5 App. Cases, p. 222, per Lord Cairns. Whether they shall be construed as *permissive* or *obligatory* is, after all, a question of the intention of the statute; and that construction will be given to them which is in accordance with that intention. No technical construction will be given, when to do so would defeat the intention which appears elsewhere upon the face of the statute; and this, in my opinion, would be the result if they were given an obligatory and restrictive signification in this case. Clearly they were not used in any such sense in other portions of the ordinance where they occur, and there is nothing in the context of this third section to compel this use of them in construing it.

For the reasons stated, I will sign an order sustaining the demurrer to the bill.